Brendan Tighe
Spasojevich Law, P.C.
52 Duane Street, 7th Floor
New York, New York 10007
Tele:   (914) 487-3592
Email: bt@spasojevichlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RACHEL VARLEY,

                    Plaintiff,              Case No.: 1:26-cv-4339

   -against-

                                                **COMPLAINT**

NEW YORK UNIVERSITY
and HILLEL INTERNATIONAL, INC.,

                    Defendants.

---

      Plaintiff, RACHEL VARLEY, by and through the undersigned attorney, Brendan Tighe, Esq., hereby files this Complaint against Defendants, NEW YORK UNIVERSITY and HILLEL INTERNATIONAL, INC., and states as follows:

### <u>INTRODUCTION</u>

1.     Plaintiff alleges that, under 42 U.S.C. § 2000e, ("Title VII") Plaintiff is entitled to recover from Defendant: (1) compensatory damages; (2) punitive damages; (3) lost wages; (4) prejudgment and post-judgment interest; and (4) attorneys' fees and costs.

2.     Plaintiff alleges that, under the New York State Human Rights Law, N.Y. Executive Law § 296 *et. seq.* ("N.Y.S.H.R.L."), Plaintiff is entitled to recover from Defendant: (1) compensatory damages; (2) punitive damages; (3) lost wages; (4) prejudgment and post-judgment interest; and (4) attorneys' fees and costs.

3.     Plaintiff alleges that, under the New York City Human Rights Law, NYC Admin. Code § 8-101 *et. seq.* ("N.Y.C.H.R.L."), Plaintiff is entitled to recover from Defendant: (1) compensatory damages; (2) punitive damages; (3) lost wages; (4) prejudgment and post-judgment interest; and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this controversy under 28 U.S.C. §§ 1331 and has supplemental jurisdiction over Plaintiff state law claims under 28 U.S.C. § 1367 in that the claims arise out of the same set of operative facts and are so related to Plaintiff's Federal claims that they form of the same case or controversy.

5.     On February 26, 2026, the U.S. Equal Employment Opportunity Commission issued a Determination and Notice of Right to Sue to Plaintiff in regard to Defendant NEW YORK UNIVERSITY.

6.     On February 26, 2026, the U.S. Equal Employment Opportunity Commission issued a Determination and Notice of Right to Sue to Plaintiff in regard to Defendant HILLEL INTERNATIONAL, INC.

7.     Venue is proper in the SOUTHERN DISTRICT OF NEW YORK pursuant to 28 U.S.C. § 1391(b) because the conduct making up the basis of the complaint took place in this judicial district.

8.     Plaintiff will serve this Complaint upon the New York City Commission on Human Rights and Corporation Counsel for the City of New York within ten (10) days of the filing of this Complaint and, thus, satisfy the notice requirements under NYCHRL § 8-502.

## PARTIES

9.     Plaintiff, RACHEL VARLEY, is an adult resident of Queens, New York.

10.     Upon information and belief, Defendant, NEW YORK UNIVERSITY, is a domestic business corporation existing under the laws of the State of New York, with a place of business located at 50 West 4th Street New York, NY 10012.

11.     Upon information and belief, Defendant, HILLEL INTERNATIONAL, INC., is a foreign business corporation existing under the laws of the State of New York, with a place of business located at 7 E 10th St., New York, NY 10003.

12.     During the period relevant to this action, Defendants maintained a joint employer relationship as each entity shared significant control over Plaintiff's employment. (Felder v United States Tennis Assn., 27 F.4th 834, 843 [2d Cir 2022]).

13.     Upon information and belief, both Defendants utilize a unified Human Resources Department.

14.     Upon information and belief, Defendant, NEW YORK UNIVERSITY exercised control over Plaintiff's employment as, among other things, it maintained Plaintiff's employment records, determined Plaintiff's rate of pay, and had authority to hire and fire Plaintiff.

15.     Upon information and belief, Defendant, HILLEL INTERNATIONAL, INC. exercised control over Plaintiff's employment as, among other things, it maintained Plaintiff's employment records, determined Plaintiff's work schedule, assigned Plaintiff's job duties, directly supervised Plaintiff's day-to-day job duties, and had authority to hire and fire Plaintiff.

**STATEMENT OF FACTS**

16.    Plaintiff was employed by Defendants from on or about January 16, 2024 to on or about April 16, 2024, in the position of Administration Aid within the Bronfman Center of Jewish Student Life.

17.    In the position of Administration Aid, Plaintiff's duties and responsibilities included: assisting with managing the building.

18.    On or about February 5, 2024, Plaintiff, along with her co-workers, attended a Diversity, Equity, and Inclusion ("DEI") training session.

19.    In this session, participants were asked to fill out a form stating their race, religion, and sexuality. Without prior warning, these submissions were then displayed for the entire group to view.

20.    Plaintiff had submitted the form indicating that Plaintiff was queer and not a member of the Jewish faith.

21.    As Plaintiff was a new employee and one of the only non-Jewish employees, upon information and belief, Plaintiff's colleagues were able to deduce that Plaintiff identified as queer.

22.    During the course of Plaintiff's employment, Plaintiff used (she/they) pronouns in Plaintiff's email signature.

23.    Upon information and belief, following the DEI training session as well as Plaintiff's use of (she/they) pronouns, Rabbi Yehud Sarna, an individual with supervisory authority over Plaintiff, became aware that Plaintiff was non-binary and queer.

24.    On February 12, 2024, a student, Student A, attempted to enter a meeting room that was reserved only for employees.

25.    Upon information and belief, Student A was a member of the Jewish faith.

26.    Upon information and belief, Student A was a Campus Engagement Intern for the Bronfman Center.

27.    Upon information and belief, Student A was a member of an additional student affinity group at NEW YORK UNIVERSITY associated with the Bronfman Center.

28.    On February 12, 2024, Plaintiff informed Student A that the room was only for employees and did not permit Student A to enter the room.

29.    After Plaintiff did not permit Student A to enter the employee-only room, Student A began a pattern of harassment against Plaintiff.

30.    On February 21, 2024, Plaintiff complained to Rabbi Yehud Sarna about Student A's behavior. Rabbi Yehud Sarna purportedly agreed that Student A's behavior was inappropriate and claimed he would speak with Student A.

31.    On or about February 21, 2024, Student A texted one of Plaintiff's co-workers and stated he was "Trying to get someone fired" and that he "was successful with one employee (university employee, not Bronfman) so I'm gonna [sic] test my luck on this new Rachel that they hired." He went on to claim Rachel Varley was "#CeasefireNow" and "#FreeYemen."

32.    Upon information and belief, Student A made these assumptions about Plaintiff because Plaintiff is not Jewish and/or identifies as non-binary and queer.

33.    On February 22, 2024 Plaintiff forwarded screenshots of such messages to Rabbi Yehud Sarna thereby placing Rabbi Yehud Sarna on notice of the plot against Plaintiff.

34.    On April 12, 2024, a student, Student B, demanded to use the staff-only meeting rooms. Plaintiff did not permit Student B to use the staff-only meeting room and Student B became hostile with Plaintiff.

35.    Upon information and belief, Student B was a member of the Jewish Faith.

36.     Upon information and belief, Student B was a member of the NEW YORK UNIVERSITY Hillel Student Executive Board.

37.     On April 12, 2024, Plaintiff sent an email to individuals with supervisory authority over Plaintiff including: Rabbi Yehud Sarna, Jon Zeftel, and Mathew Shepard in which Plaintiff detailed Student B's behavior and explained that Plaintiff felt increasing hostility and felt targeted.

38.     On or about April 16, 2024, New York University terminated Plaintiff's employment due to "student complaints." Upon information and belief, these student complaints were rooted in a discriminatory animus towards Plaintiff because of her religion, gender identity, and/or sexuality.

39.     Upon information and belief, New York University was aware of the discriminatory animus underlying these student complaints.

40.     Thus, upon information and belief, New York University terminated Plaintiff's employment because of her religion, gender identity, and/or sexuality.

41.     Alternatively, Defendants terminated Plaintiff's employment in retaliation because of her complaint of being targeted.

42.     Plaintiff has been damaged by the Defendants' wrongful conduct.

## COUNT 1
### [Unlawful Discrimination in Violation of Title VII – Religion]

43.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

44.     At all times relevant herein, Defendants were employers within the meaning of 42 U.S.C. § 2000e as Defendants are engaged in an industry affecting commerce and employ fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

45.    Pursuant to Title VII, it is an "unlawful employment practice for an employer to… to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, **religion**, sex, or national origin…." (42 U.S.C. § 2000e-2 [emphasis added]).

46.    As Justice Gorsch said, "[f]or an employer to discriminate against employees for being homosexual… the employer must intentionally discriminate against individual men and women in part because of sex. That has always been prohibited by Title VII's plain terms—and that should be the end of the analysis. (Bostock v. Clayton County, 140 S. Ct. 1731, 1743 [2020][internal quotation omitted]).

47.    Upon information and belief, Defendants learned that Plaintiff was not Jewish after Plaintiff had already been hired.

48.    Here, Defendants terminated Plaintiff's employment in part because Plaintiff was not a member of the Jewish faith.

49.    When Defendants received purported complaints from students—which upon information and belief Defendants knew were grounded in a discriminatory animus—Defendants saw an opportunity to terminate Plaintiff's employment and it took it.

50.    As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages, all in amounts to be determined at trial.

## COUNT 2
### [Unlawful Discrimination in Violation of Title VII – Sex]

51.    Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

52.     At all times relevant herein, Defendants were employers within the meaning of 42 U.S.C. § 2000e as Defendants are engaged in an industry affecting commerce and employ fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

53.     Pursuant to Title VII, it is an "unlawful employment practice for an employer to… to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin…." (42 U.S.C. § 2000e-2 [emphasis added]).

54.     As Justice Gorsch said, "[f]or an employer to discriminate against employees for being homosexual… the employer must intentionally discriminate against individual men and women in part because of sex. That has always been prohibited by Title VII's plain terms—and that should be the end of the analysis. (Bostock v. Clayton County, 140 S. Ct. 1731, 1743 [2020][internal quotation omitted]).

55.     Here, Defendants terminated Plaintiff's employment in part because Plaintiff was a female who identified as non-binary and queer therefore did not conform to the standards Respondent set for females.

56.     When Defendants received purported complaints from students—which upon information and belief Defendants knew were grounded in a discriminatory animus—Defendants saw an opportunity to terminate Plaintiff's employment and it took it.

57.     Upon information and belief, Defendants terminated Plaintiff in part because Plaintiff was a female with a sexual preference that included females.

58.     Thus, as Defendants discriminated against Plaintiff for being queer, Defendants intentionally discriminated against Plaintiff in part because of sex.

59.    As a result of Defendant's wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages, all in amounts to be determined at trial.

## COUNT 3
### [Retaliation in Violation of Title VII]

60.    Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

61.    At all times relevant herein, Defendants were employers within the meaning of 42 U.S.C. § 2000e as Defendants are engaged in an industry affecting commerce and employ fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

62.    Pursuant to Title VII, it is an unlawful employment practice for an employer "to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title." (42 U.S.C. § 2000e-3).

63.    Upon information and belief, Plaintiff was one of the only non-Jewish employees in her division as well as the only queer employee in her division.

64.    Here, Plaintiff complained—after being harassed by multiple students and discovering a plot to get Plaintiff fired grounded in discriminatory animus—that Plaintiff was being targeted.

65.    Here, Plaintiff placed Defendants on notice of the plot to terminated Plaintiff as well as the underlying discriminatory animus.

66.    Here, less than one month after Plaintiff's complaint, Defendants terminated Plaintiff's employment.

67.    Upon information and belief, Defendants terminated Plaintiff's employment because Plaintiff opposed discriminatory harassment forbidden by Title VII.

68.    As a result of Defendant's wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages, all in amounts to be determined at trial.

## COUNT 4
## [Unlawful Discrimination in Violation of NYSHRL – Creed]

69.    Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

70.    Pursuant to NYSHRL, it is an unlawful discriminatory practice for "an employer…because of an individual's …**creed**…sexual orientation, gender identity or expression…[or] sex…to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." (N.Y.S.H.R.L. § 296[1][a][emphasis added]).

71.    Defendant is an employer under the N.Y.S.H.R.L.

72.    Upon information and belief, Defendants learned that Plaintiff was not Jewish until after Plaintiff had already been hired.

73.     Here, Defendants terminated Plaintiff's employment in part because Plaintiff was not a member of the Jewish faith.

74.     When Defendants received purported complaints from students—which upon information and belief Defendants knew were grounded in a discriminatory animus—Defendants saw an opportunity to terminate Plaintiff's employment and it took it.

75.     Due to the intentional, willful, and unlawful acts of the Defendant, Plaintiff suffered damages in and entitled to an award of, an amount not presently ascertainable of compensatory damages, punitive damages, lost wages, and front pay. N.Y.S.H.R.L. § 297(9)

76.     Plaintiff is also entitled to an award of reasonable attorneys' fees, costs, and expenses.

**COUNT 5**
**[Unlawful Discrimination in Violation of NYSHRL – Sexual Orientation / Sex]**

77.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

78.     Pursuant to NYSHRL, it is an unlawful discriminatory practice for "an employer…because of an individual's …creed…**sexual orientation**, gender identity or expression…[or] **sex**…to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." (N.Y.S.H.R.L. § 296[1][a][emphasis added]).

79.     Defendant is an employer under the N.Y.S.H.R.L.

80.     Here, Defendants terminated Plaintiff's employment in part because Plaintiff was a female who identified as queer therefore did not conform to the standards Respondent set for females.

81.     When Defendants received purported complaints from students—which, upon information and belief, Defendants knew were grounded in a discriminatory animus—Defendants saw an opportunity to terminate Plaintiff's employment and it took it.

82. Upon information and belief, Defendants terminated Plaintiff in part because Plaintiff was a female with a sexual orientation that included females.

83. Thus, Defendants discriminated against Plaintiff in part because of sex and/or sexual orientation.

84. Due to the intentional, willful, and unlawful acts of the Defendant, Plaintiff suffered damages in and entitled to an award of, an amount not presently ascertainable of compensatory damages, punitive damages, lost wages, and front pay. N.Y.S.H.R.L. § 297(9)

85. Plaintiff is also entitled to an award of reasonable attorneys' fees, costs, and expenses.

## COUNT 6
### [Unlawful Discrimination in Violation of NYSHRL – Gender Identity or Expression]

86. Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

87. Pursuant to NYSHRL, it is an unlawful discriminatory practice for "an employer…because of an individual's …creed…sexual orientation, **gender identity or expression**…[or] sex…to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." (N.Y.S.H.R.L. § 296[1][a][emphasis added]).

88. Defendant is an employer under the N.Y.S.H.R.L.

89. Here, Defendants terminated Plaintiff's employment in part because Plaintiff identified as non-binary.

90. Here, upon information and belief, Plaintiff was the only employee in her division to identify as non-binary.

91. Here, upon information and belief, Defendants did not learn Plaintiff was non-binary until after Plaintiff was hired.

92.     When Defendants received purported complaints from students—which, upon information and belief, Defendants knew were grounded in a discriminatory animus—Defendants saw an opportunity to terminate Plaintiff's employment and it took it.

93.     Upon information and belief, Defendants terminated Plaintiff in part because Plaintiff identified as non-binary.

94.     Thus, Defendants discriminated against Plaintiff in part because of gender identity or expression.

95.     Due to the intentional, willful, and unlawful acts of the Defendant, Plaintiff suffered damages in and entitled to an award of, an amount not presently ascertainable of compensatory damages, punitive damages, lost wages, and front pay. N.Y.S.H.R.L. § 297(9)

96.     Plaintiff is also entitled to an award of reasonable attorneys' fees, costs, and expenses.

**COUNT 7**
**[N.Y.S.H.R.L. Retaliation]**

97.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

98.     The N.Y.S.H.R.L. applies to the Defendants and protects the Plaintiff.

99.     The N.Y.S.H.R.L. mandates that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article. Retaliation may include, but is not limited to, disclosing an employee's personnel files because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article, except where such disclosure is made in the course of commencing or responding to a complaint in any proceeding under this article or any other civil or criminal action or other judicial or administrative

proceeding    as    permitted    by    applicable    law. (N.Y.S.H.R.L. § 296[g][7]).

100.    "The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof…" as such "[e]xceptions to and exemptions from the provisions of this article shall be construed narrowly in order to maximize deterrence of discriminatory conduct…."(NYSHRL § 296[1][a]).

101.    Therefore, as the New York State Court of Appeals has recognized, "Courts must construe the Human Rights Laws broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." (Syeed v Bloomberg L.P., 41 NY3d 446, 451 [2024][internal quotation omitted]).

102.    Upon information and belief, Plaintiff was one of the only non-Jewish employees in her division as well as the only queer employee in her division.

103.    Here, Plaintiff complained—after being harassed by multiple students and discovering a plot to get Plaintiff fired grounded in discriminatory animus—that Plaintiff was being targeted.

104.    Here, Plaintiff placed Defendants on notice of the plot to terminated Plaintiff as well as the underlying discriminatory animus.

105.    Here, less than one month after Plaintiff's complaint, Defendants terminated Plaintiff's employment.

106.    The forgoing conduct, as alleged, constitutes a willful violation of the N.Y.S.H.R.L. without a good or reasonable basis.

107.    Due to the Defendant's violations of the N.Y.S.H.R.L., Plaintiff is entitled to recover from Defendant compensatory damages, punitive damages, attorneys' fees, and costs and disbursements of this action, pursuant to See N.Y. Exec. Law § 297(9).

## COUNT 8
### [N.Y.C.H.R.L. – Creed]

108.    Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

109.    The N.Y.C.H.R.L. applies to the Defendant and protects the Plaintiff.

110.    Pursuant to N.Y.C.H.R.L. it is an unlawful discriminatory practice for an employer "or an employee or agent thereof, because of the actual or perceived…**creed**…gender…[or] sexual orientation…of any person:…(2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment." (N.Y.C.H.R.L. § 8-107[1][a][emphasis added).

111.    Upon information and belief, Defendants learned that Plaintiff was not Jewish until after Plaintiff had already been hired.

112.    Here, Defendants terminated Plaintiff's employment in part because Plaintiff was not a member of the Jewish faith.

113.    When Defendants received purported complaints from students—which upon information and belief Defendants knew were grounded in a discriminatory animus—Defendants saw an opportunity to terminate Plaintiff's employment and it took it.

114.    Due to the Defendant's violations of the N.Y.C.H.R.L., Plaintiff is entitled to recover from Defendant compensatory damages, punitive damages, attorneys' fees, and costs and disbursements of this action, pursuant to N.Y.C.H.R.L. §8-502(a).

## COUNT 9
### [N.Y.C.H.R.L. – Sexual Orientation]

115.    Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

116. The N.Y.C.H.R.L. applies to the Defendant and protects the Plaintiff.

117. Pursuant to N.Y.C.H.R.L. it is an unlawful discriminatory practice for an employer "or an employee or agent thereof, because of the actual or perceived…creed…gender…[or] **sexual orientation**…of any person:…(2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment." (N.Y.C.H.R.L. § 8-107[1][a][emphasis added).

118. Here, Defendants terminated Plaintiff's employment in part because Plaintiff identified as queer.

119. When Defendants received purported complaints from students—which, upon information and belief, Defendants knew were grounded in a discriminatory animus—Defendants saw an opportunity to terminate Plaintiff's employment and it took it.

120. Upon information and belief, Defendants terminated Plaintiff in part because Plaintiff was a female with a sexual orientation that included females.

121. Thus, as Defendants discriminated against Plaintiff for being queer, Defendants intentionally discriminated against Plaintiff in part because of sex.

122. Due to the Defendant's violations of the N.Y.C.H.R.L., Plaintiff is entitled to recover from Defendant compensatory damages, punitive damages, attorneys' fees, and costs and disbursements of this action, pursuant to N.Y.C.H.R.L. §8-502(a).

### COUNT 10
### [N.Y.C.H.R.L. – Gender]

123. Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

124. The N.Y.C.H.R.L. applies to the Defendant and protects the Plaintiff.

125. Pursuant to N.Y.C.H.R.L. it is an unlawful discriminatory practice for an employer "or an employee or agent thereof, because of the actual or perceived…creed…**gender**…[or] sexual orientation…of any person:…(2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment." (N.Y.C.H.R.L. § 8-107[1][a][emphasis added).

126. Here, Defendants terminated Plaintiff's employment in part because Plaintiff identified as non-binary.

127. Here, upon information and belief, Plaintiff was the only employee in her division to identify as non-binary.

128. Here, upon information and belief, Defendants did not learn Plaintiff was non-binary until after Plaintiff was hired.

129. When Defendants received purported complaints from students—which, upon information and belief, Defendants knew were grounded in a discriminatory animus—Defendants saw an opportunity to terminate Plaintiff's employment and it took it.

130. Upon information and belief, Defendants terminated Plaintiff in part because Plaintiff identified as non-binary.

131. Thus, Defendants discriminated against Plaintiff in part because of gender.

132. Due to the Defendant's violations of the N.Y.C.H.R.L., Plaintiff is entitled to recover from Defendant compensatory damages, punitive damages, attorneys' fees, and costs and disbursements of this action, pursuant to N.Y.C.H.R.L. §8-502(a).

**COUNT 11**
**[N.Y.C.H.R.L. Retaliation]**

133.    Plaintiff re-alleges and re-avers each and every allegation and statement contained in the preceding paragraphs of this Complaint as if fully set forth herein.

134.    The N.Y.C.H.R.L. applies to the Defendant and protects the Plaintiff.

135.    The N.Y.C.H.R.L. mandates that:

**Retaliation**. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has
(i)     **opposed any practice forbidden under this chapter**,
(ii)    filed a complaint, testified or assisted in any proceeding under this chapter,
(iii)   commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter,
(iv)    assisted the commission or the corporation counsel in an investigation commenced pursuant to this title,
(v)     requested a reasonable accommodation under this chapter, or
(vi)    provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.

(N.Y.C.H.R.L. § 8-107[7]).

136.    "Protected activity" refers to "actions taken to protest or oppose statutorily prohibited discrimination" (Aspilaire v Wyeth Pharmaceuticals, Inc., 612 F Supp 2d 289, 308 [SD NY 2009]).

137.    Administrative Code § 8-107 (7) should be construed "like other provisions of the City's Human Rights Law, broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (Fletcher v Dakota, Inc., 99 AD3d 43, 51 [1st Dept 2012]).

138.    Furthermore, "the language of the City HRL does not permit any type of challenged conduct to be categorically rejected as nonactionable" (Williams v New York City Hous. Auth., 61 AD3d 62, 71 [1st Dept 2009]).

139. Upon information and belief, Plaintiff was one of the only non-Jewish employees in her division as well as the only queer employee in her division.

140. Here, Plaintiff complained—after being harassed by multiple students and discovering a plot to get Plaintiff fired grounded in discriminatory animus—that Plaintiff was being targeted.

141. Here, Plaintiff placed Defendants on notice of the plot to terminated Plaintiff as well as the underlying discriminatory animus.

142. Here, less than one month after Plaintiff's complaint, Defendants terminated Plaintiff's employment.

143. The forgoing conduct, as alleged, constitutes a willful violation of the N.Y.C.H.R.L. without a good or reasonable basis.

144. Due to the Defendant's violations of the N.Y.C.H.R.L., Plaintiff is entitled to recover from Defendant compensatory damages, punitive damages, attorneys' fees, and costs and disbursements of this action, pursuant to N.Y.C.H.R.L. §8-502(a).

## JURY DEMAND

145. Plaintiff Demands a Trial by Jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that this Court grant the following relief:

(a)     An award of compensatory damages;

(b)     An award of punitive damages;

(c)     An award of lost wages;

(d)     An award of lost benefits;

(e)     An award of front-pay; and

(f)     An award of costs and expenses associated with this action, together with reasonable attorneys' fees; and,

(g)    Such other and further relief as this Court determines to be just and proper.

Dated: New York, New York
         May 25, 2026

                                                  Respectfully submitted


                                                  By: _Brendan Tighe_____
                                                          Brendan Tighe, Esq.